UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEY YAM, | CASE NO. 06-CV-528 W (CAB) |
| Plaintiff, | **ORDER ADOPTING REPORT** |
| v. | **& RECOMMENDATION** |
| JO ANNE B. BARNHART, | |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff They Yam seeks judicial review of Social Security Commissioner Jo Anne B. Barnhart's determination that she is not entitled to disability benefits under Title XVI of the Social Security Act. On referral, Magistrate Judge Cathy A. Bencivengo issued a Report & Recommendation ("Report") advising this Court to deny Yam's motion for summary judgment and grant the government's motion for summary judgment upholding the decision. On July 18, 2007, Yam filed objections to the Report. Because de novo review shows substantial evidence to support the Social Security Administration's final action, the Court will **ADOPT** the Report in its entirety.

## I. Background

The facts of this case, including Yam's medical history, are more fully set forth in the Report and are incorporated herein by reference. By way of summary, Yam moved from Cambodia to the United States in 1983. (Administrative Record "AR" at 565.) She never attended school, except for two or three months of adult school to study English in 1984. (AR at 566–67.) She last worked in 1986. (AR at 571.)

Yam alleged disability as of January 1, 1999. (AR at 151.) Her physical problems included chest pains, stomachache, and numbness in half of her body. (AR at 625.) She also explained that her asthma interfered with her daily living, because it caused chest pain and coughing. (AR at 628). She experienced neck and back pain, which she attributed to a gun beating she suffered in Cambodia for stealing a cucumber. (AR at 601.) She also testified that she was depressed, had problems remembering things, and had nightmares that ghosts were hunting her two or three times per week. (AR at 630.) She saw shadows at night and heard voices two or three times a week saying they wanted to kill her. (AR at 631.) She once cut her wrist with a glass because she was angry and wanted to hurt herself. (AR 573–75.) Finally, Yam testified that she got angry and felt like killing herself frequently—even within a few weeks of the hearing, when she wanted to tie a rope around her neck—but she never actually attempted suicide. (AR at 590.)

On June 10, 2002, Yam applied for disability benefits. (AR at 151–53.) On August 23, 2002, the Social Security Administration denied her application because Yam's condition was not severe enough to keep her from working. (AR at 69.) Yam requested reconsideration, but the Administration again denied her application. (AR at 74–77.)

On November 15, 2002, Yam requested a hearing before an Administrative Law Judge (ALJ). (AR at 78–79.) After a hearing, the ALJ issued a written decision finding that Yam was not disabled. (AR at 102–22.) Yam requested an Appeals Council Review of the decision. (AR at 123–31.) On April 30, 2004, the Appeals Council

1 remanded the case to the ALJ for further consideration. (AR at 132–34.) On
2 November 17, 2005, after a second hearing, the ALJ issued a written decision
3 determining that Yam was not disabled. (AR at 13–65.) Yam requested a second
4 Appeals Council review, but the Appeals Council found no grounds for appeal. (AR at
5 5–7.) Thus, the ALJ's second written decision became the Commissioner's final action.
6 (AR at 5.)

7 On March 13, 2006, having exhausted all administrative remedies, Yam
8 challenged the proceedings here. On July 26, 2006, Yam filed a motion for summary
9 judgment [Doc. No. 10] arguing that the Court should reverse the ALJ's decision and
10 remand for payment of benefits. On August 9, 2006, Defendant filed a cross-motion for
11 summary judgment [Doc. Nos. 13–15] arguing that the Court should affirm the ALJ's
12 decision. Judge Bencivengo recommended that the Court grant the government's
13 motion. Yam objected. The Court now reviews the Report de novo. <u>See</u> 28 U.S.C. §
14 636(b)(1)(C); <u>United States v. Raddatz</u>, 447 U.S. 667, 676 (1980).

15

16 **II.** **<u>Legal Standards</u>**

17 The Social Security Act entitles a claimant to disability benefits if she is unable
18 to "engage in any substantial gainful activity by reason of any medically determinable
19 physical or mental impairment which can be expected to result in death or which has
20 lasted or can be expected to last for a continuous period of not less than twelve
21 months." 42 U.S.C. §§ 416(i), 423(d)(1)(A). To qualify for benefits, the impairment
22 must result from "anatomical, physiological, or psychological abnormalities which are
23 demonstrable by medically acceptable clinical and laboratory diagnostic techniques."
24 42 U.S.C. § 423(d)(3); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).
25 Further, the impairment must be of "such severity that [the claimant] is not only unable
26 to do [her] previous work but cannot, considering [her] age, education, and work
27 experience, engage in any other kind of substantial gainful work which exists in the
28 national economy." 42 U.S.C. § 423 (d)(2)(A).

Sections 205(g) and 1631(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). But the scope of review is limited. A court may not overturn the Commissioner's final action unless (1) the ALJ's findings of fact are not supported by substantial evidence, or (2) the ALJ failed to apply the proper legal standards. See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995). "Substantial evidence" means evidence a reasonable person might accept as adequate to support the ALJ's conclusion, considering the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). In other words, substantial evidence means "more than a scintilla but less than a preponderance" of the evidence. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). The Court must consider both the evidence that supports and detracts from the Commissioner's conclusions. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).

Even if substantial evidence supports the ALJ's findings, a court must set the decision aside if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a decision. See Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978). But if the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1989).

### III. Discussion

Yam contends that the ALJ's adverse decision was not supported by substantial evidence. Yam makes two main arguments: (1) the ALJ erroneously rejected her testimony as not credible, and (2) the ALJ improperly rejected the opinions of Yam's treating physicians. As the Report concluded, Yam's arguments fail as a matter of law. Therefore, the Court will uphold the ALJ's decision.

//

**A.     The ALJ properly discredited Yam's inconsistent testimony.**

Yam's porous account of the status of her driver's license compromised her credibility. Yam first denied having a driver's license at all. Then, she admitted that she had a license at one time. On further questioning, she stated that the license expired in 1988. Only after the questioning attorney produced a photocopy of her current valid and unexpired driver's licence did Yam acknowledge she did in fact have a driver's license. (AR at 568.) Thus, the ALJ properly concluded that Yam's perception, memory, and sincerity all undermined her credibility in general.

Put simply, Yam either could not recall, or lied about, essential facts establishing her identity and willingness to follow basic laws. As noted in the Report, the ALJ has the authority to determine whether a claimant's testimony is credible. Bunnell v. Sullivan, 947 F.2d 341, 345–46 (9th Cir. 1991). Further, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). And even if Yam merely forgot or misunderstood the question, substantial evidence still supports the ALJ's credibility determination. Yam's shoddy recollection of facts she had no incentive to misrepresent casts doubt on all her testimony.

Yam contends that the ALJ erroneously concluded that she lied under oath by testifying that her license was automatically renewed by mail. Yam testified that "they just sent [sic] to me and [she did]n't know anything about it." (AR at 570.) Dr. Henderson also testified that Yam's license was automatically renewed by mail. (Pl.'s Obj. to Report at 3.) Yam also cites portions of the California Department of Motor Vehicles' website regarding automatic renewal by mail. (Id.) But these provisions still require an application and a fee to renew a license—hardly an "automatic" renewal. Further, it strains credulity to suggest that the DMV sent Yam a new license without her knowledge. Thus, the Court will not second-guess the ALJ's credibility finding.

Yam also argues that because the Appeals Council reversed the ALJ's first decision, the finding therein that Yam lied under oath cannot affect Yam's credibility.

(Pl.'s Obj. to Report at 2.)  The Appeals Council, however, remanded the case only to consider additional evidence—leaving the ALJ's factfinding legally intact.  More pointedly, the Appeals Council did <u>not</u> reverse the ALJ's credibility determination. Thus, the ALJ properly relied on unreversed conclusions from the first hearing in denying Yam's disability benefits.

Further, leaving aside that testimony, several other instances undermine Yam's credibility.  For example, Yam claims that she does not speak English.  But the DMV issued her a driver's license over twenty years ago, even though anyone who is "unable to read and understand simple English used in highway traffic and directional signs" does not qualify for one.  (<u>See</u> Report at 20.)  In addition, Yam has given inconsistent testimony regarding her ability to do different types of work.  Yam claimed that she could not do anything around the house, however, she testified that she participated extensively in her children's care by washing clothes, shopping for groceries, cooking about six days a week, and walking her children to school.  (Report at 21.)  Standing alone, these inconsistencies constitute substantial evidence to support the ALJ's credibility determination.

Yam further contends that the ALJ committed legal error by holding her failure to seek prompt medical treatment against her.  (Pl.'s Obj. to Report at 13.)  Under <u>Gamble v. Chater</u>, 68 F.3d 319, 321 (9th Cir. 1995), Yam argues that disability benefits may not be denied because of a claimant's failure to obtain treatment she cannot afford. But the ALJ did not assign dispositive weight to Yam's failure to seek treatment. Rather, the ALJ implicitly reasoned that she did not subjectively believe that her condition warranted treatment—which, in turn, contradicted her testimony about the severity of her condition.  Thus, in conjunction with the other inconsistencies, the ALJ justifiably rejected her testimony regarding the severity of her condition as not credible.

Yam also misconstrues the ALJ's conclusions regarding her ability to work.  Yam testified that she could, and did, care for her family members.  But the ALJ did <u>not</u> determine that simply because she can care for her family she is therefore able to work.

1 Again, the ALJ found that Yam's ability to care for her family implicitly contradicted her
2 other testimony regarding the existence and severity of her disability. Thus, whether
3 Yam's skills transfer to a work setting or not, Yam's credibility suffers.
4       Therefore, having reviewed the record as a whole, the Court must conclude that
5 substantial evidence supports the ALJ's credibility determination.

7 **B.    The ALJ properly assessed the testimony of Yam's doctors.**
8       An ALJ may disregard a treating physician's opinion if the ALJ sets forth "specific,
9 legitimate reasons . . . based on substantial evidence" in the record. Rodriguez v.
10 Bowen, 876 F.2d 759, 761 (9th Cir. 1992). Yam contends that the ALJ erroneously
11 rejected the opinions of Drs. Henderson, Zappone, Grisolia, and Sidrick. Yam further
12 contends that the ALJ improperly credited Dr. Soliman's testimony because it was
13 unreliable. Finally, Yam argues that the ALJ improperly disregarded the testimony of
14 Tuan Le, a physician's assistant. But specific and legitimate reasons justified favoring
15 Dr. Soliman over Yam's other witnesses. Therefore, the court will affirm the ALJ's
16 decision.
17       *Dr. Henderson.* Dr. Henderson's opinions lacked support elsewhere in the record
18 and contradicted portions of the opinions of Drs. Soliman, Rivera-Miya and Hurwitz.
19 As the Report points out, Yam's visits to Dr. Henderson were sporadic. (Report at 25.)
20 Moreover, the treating notes from Yam's visits with Dr. Henderson were scant, and Dr.
21 Henderson did not perform standard clinical tests on Yam. (Id.) Even further, Dr.
22 Zappone's opinions and notes directly contradicted Dr. Henderson's opinions and notes.
23 Together, specific and legitimate reasons based on substantial evidence supports the
24 ALJ's conclusion as to Dr. Henderson.
25       *Dr. Zappone.* Yam does not offer any substantive argument as to why the ALJ
26 improperly rejected the opinions of Dr. Zappone. Rather, Yam simply states a bare
27 conclusion that the ALJ erred. Having reviewed the record, the Court finds no basis for
28 error.

*Dr. Grisolia.* The ALJ properly credited Dr. Grisolia's opinions but refused to accord them controlling weight. Dr. Grisolia diagnosed Yam with sonophobia (fear of sound)—but Yam herself testified that she frequently listens to Cambodian music. (AR at 50.) Moreover, Dr. Grisolia noted Yam's persistent headaches, but never prescribed anything stronger than Tylenol. Indeed, Dr. Grisolia never performed repeated physical examinations or provided a clinical finding that Yam actually suffered from severe and disabling headaches. (AR at 50.) Thus, although Dr. Grisolia treated Yam, the ALJ provided specific and legitimate reasons to reject parts of his testimony.

*Dr. Sidrick.* Dr. Sidrick wrote two different opinion letters regarding Yam, but these contrasted sharply. (AR at 46.) Dr. Sidrick also stated that Yam had attempted suicide, whereas Yam only claimed she wanted to hurt herself. (AR at 47.) Dr. Sidrick stated that Yam had endured years of torture, but this too contradicts Yam's own testimony. (AR at 48.) Finally, although Dr. Sidrick reported that Yam was unable to use her hands for any repetitive motion, the ALJ noted that there was no objective clinical or laboratory evidence in the record that Yam had issues with her right wrist or hand, nor did Dr. Sidrick's treating notes document any complaints of problems with Yam's right wrist or hand. (AR at 48.) On the whole, these inconsistencies support an inference that Dr. Sidrick based her opinion on dubious information or lacked a firm grasp of Yam's condition. Together, they constitute specific, legitimate reasons to discredit Dr. Sidrick's testimony.

*Dr. Soliman.* Yam contends that the ALJ improperly credited Dr. Soliman, a government-hired physician who only examined Yam only once. But the ALJ only gave moderate weight to Dr. Soliman's opinions. (AR at 49.) Further, Dr. Soliman is a board-certified psychiatrist who conducted a mental-status examination and report far more detailed than any other in the record. (Id.) Dr. Soliman's opinions are generally supported by the record as a whole and are corroborated by two other board-certified state-agency psychiatrists, Drs. Hurwitz and Rivera-Miya. (Id.) These are specific, legitimate reasons for crediting Dr. Soliman's opinions.

1 *Tuan Le*. The ALJ properly determined that the physician's assistant, Tuan Le,
2 is not an acceptable medical source, and thus rejected his testimony as it related to the
3 *existence* of a medical condition. Under 20 C.F.R. § 416.913(d)(1), a physician's
4 assistant is considered an "other source," not an "acceptable medical source." Gomez
5 v. Chater, 74 F.3d 967 (9th Cir. 1996), does not control. As Judge Bencivengo ably
6 explained, Gomez relies on the now-nonexistent 20 C.F.R. § 416.913(a)(6). Thus, the
7 ALJ properly held Gomez inapplicable.

8 Under 20 C.F.R. § 416.913(d)(1) a person seeking to establish the severity of an
9 impairment may use evidence from "other sources." Thus, to the extent Le's testimony
10 was relevant to the *severity* of Yam's condition, the ALJ found his opinions unsupported
11 or outweighed by other evidence. Nothing required the ALJ to take Le's opinions as
12 conclusive. Accordingly, the ALJ did not err in determining that Tuan Le's opinions
13 were not entitled to controlling weight.

14 In short, Yam's objections boil down to one incorrect proposition: that a treating
15 physician's opinion is usually given controlling weight, and therefore *Yam's* treating
16 physicians *must* be given controlling weight. But Yam misunderstands the law. She has
17 identified no cognizable legal error.

18

19 **IV. Conclusion & Order**

20 Because the ALJ properly found Yam's testimony not credible, and rejected the
21 opinions of her treating physicians with specific, legitimate reasons, the Court hereby
22 **ADOPTS** the Report & Recommendation in its entirety.

23 //
24 //
25 //
26 //
27 //
28 //

Thus, the Court hereby **DENIES** Yam's motion for summary judgment and **GRANTS** Barnhart's motion for summary judgment. The Clerk shall close the case file.

**IT IS SO ORDERED**.

DATED: September 4, 2007

_____
Hon. Thomas J. Whelan
United States District Judge